UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE COLEMAN, et al.,

    Plaintiffs,

v.

JENNIFER GRANHOLM, et al.,

    Defendants.
_____/

Case No. 06-12485

Honorable Patrick J. Duggan

# **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 2, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

This is a *pro se* civil rights action filed pursuant to 42 U.S.C. §§ 1983 and 1985. Plaintiffs are five state prisoners currently incarcerated in the Alger Maximum Correctional Facility in Munising, Michigan, the Huron Valley Complex – Men in Ypsilanti, Michigan, and the Marquette Branch Prison in Marquette, Michigan. In their complaint, Plaintiffs allege constitutional violations relating to their alleged denial of appliances (specifically radios previously permitted in segregation), inhumane conditions in segregation units, uncomfortable shoes, inadequate dental products, use of bright lights in cells up to and exceeding 18 hours a day, limits on the time frame for appealing charges of major misconduct, and denial of access to the courts. (*See* Doc. No. 23, Am.

Compl. ¶¶ 136, 145-52.)

Defendants Patricia Caruso, David Bergh, Barbara Bouchard, and Willie O. Smith filed a motion to dismiss or, in the alternative for summary judgment, on July 24, 2007.[1] On September 14, 2007, Defendant Ron Bobo filed a motion to dismiss joining the Defendants' motion filed on July 24, 2007.[2] This Court referred all pre-trial matters to Magistrate Judge Steven D. Pepe on October 4, 2007.

On March 5, 2008, Magistrate Judge Pepe issued a Report and Recommendation ("R&R") recommending that the MDOC Defendants' motions be granted. Plaintiffs filed an objection to Magistrate Judge Pepe's R&R, which was dated March 15, 2008 and filed with the Court on March 24, 2008.[3]

## I. **Standard of Review**

The parts of the R&R to which the parties specifically object will be reviewed by the Court *de novo*. *See* FED. R. CIV. P. 72(b); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(explaining that vague, general, and conclusory objections are tantamount to a complete failure to object). The Court, however, "is not required to articulate all of

---

[1]Defendant Caruso is the Director of the Michigan Department of Corrections ("MDOC"); Defendant Bergh is the warden at the Alger Maximum Correctional Facility; Defendant Bouchard is the former warden at the Alger Maximum Correctional Facility; and Defendant Smith is the warden at the Ionia Maximum Correctional Facility.

[2]Defendants Caruso, Bergh, Bouchard, Smith, and Bobo will hereinafter be referred to collectively as the "MDOC Defendants."

[3]On August 27, 2007, this Court denied, without prejudice, Plaintiffs' Motion for Class Certification. (*See* Doc. No. 66, 8/27/07 Op. & Or. at 3.) Nevertheless, Plaintiffs continue to argue on behalf of a purported class. Because no class has been certified, this Court analyzes Plaintiffs' claims individually as alleged in their amended complaint. (*See* Doc. No. 23, Am. Compl.)

the reasons it rejects a party's objections." *Id.* (citations omitted); *see also Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

## II. <u>Analysis</u>

### A. **Summary Judgment Standard of Review**

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition

to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

**B.     Liability Under 42 U.S.C. § 1983**

Plaintiffs' amended complaint asserts claims pursuant 42 U.S.C. § 1983. To succeed on their § 1983 claims against the MDOC Defendants, Plaintiffs must demonstrate that the MDOC Defendants' conduct deprived them of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)(citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).

        1.     <u>Plaintiff Percival's Access to Courts Claims</u>

Plaintiff Percival first objects to Magistrate Judge Pepe's R&R to the extent that it recommends that his claim alleging denial of access to the courts be dismissed. With respect to the MDOC Defendants, Plaintiff Percival alleges "that Caruso's removal of a time limit to hear misconduct appeals has delayed his access to court and prevents him from planning for finances and other necessary litigation." (Am. Compl. ¶ 148.) Plaintiff Percival also alleges that "Bergh, Bouchard, and Bobo did deprive him of access to typing room pursuant to unlawful custom, where injury was predictable and preventable." (*Id.* ¶ 151.) Plaintiff Percival alleges that these alleged acts violated his First and Fourteenth Amendment rights.

It is well-settled that prisoners have a First and Fourteenth Amendment right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350, 116 S. Ct. 2174, 2179 (1996). In order to succeed on a claim alleging interference with access to the courts, a

4

prisoner must demonstrate an "actual injury" and that a state actor intentionally interfered with the pursuit of the prisoner's legal claim. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)(citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc)). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id.* (citation omitted).

This Court concurs with Magistrate Judge Pepe and finds that Plaintiff Percival has failed to demonstrate a denial of his right to access to the courts. With respect to Plaintiff Percival's contention that the removal of the time limit to hear prisoner misconduct appeals interferes with his access to the courts, this Court does not believe that Plaintiff Percival has demonstrated that the removal of the time limit to hear prisoner misconduct appeals has resulted in "actual prejudice to pending or contemplated litigation." *Id.* Plaintiff Percival argues that the removal of the time limit to hear prisoner misconduct appeals allows the MDOC to unnecessarily delay and requires prisoners with three strikes, such as Plaintiff Percival, to keep the $350.00 filing fee in their accounts at all times. (*See* Pls.' Obj. at 4.) As Magistrate Judge Pepe noted, the removal of the time limit to hear prisoner misconduct appeals "does not directly affect Plaintiff's ability to bring his claim before any court." (R&R at 7.) Consequently, Plaintiff Percival has failed to demonstrate that the removal of a time limit to hear prisoner misconduct appeals resulted in a deprivation of his right to access to courts.

The same is true for Plaintiff Percival's allegation that he is being denied access to the courts because he is unable to use typing room for more than two hours. Plaintiff

5

Percival has failed to show that the two-hour limitation on typing room access actually prejudiced his pending or contemplated litigation.

In conclusion, the MDOC Defendants are entitled to summary judgment as to Plaintiff Percival's denial of access to the courts claim.

2. Plaintiffs' Eighth Amendment Claims

Plaintiffs Percival and Carney allege that Defendants "Granholm, Caruso, Bouchard, and Smith did conspire, agree and act in concert to deprive [Plaintiff Percival] of court-ordered meaningful in-cell activity, mental health evaluations, and religious, educational, and recreational access, pursuant to established custom," in violation of the Eighth Amendment. (Am. Compl. ¶¶ 136, 145.) Plaintiff Raleem-X alleges that Defendant "Bouchard has deprived him of meaningful recreational activity over an extended period of time," in violation of the Eighth Amendment. (*Id.* ¶ 149.) Plaintiff Raleem-X also alleges that Defendants "Bergh and Bouchard have deprived him of access to meaningful oral hygiene," in violation of the Eighth Amendment. (*Id.* ¶ 150.) Finally, Plaintiff Percival alleges that the continuous use of bright lights in segregation violates his Eighth Amendment rights. (*Id.* ¶ 152.)

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991). An Eighth Amendment claim is composed of an objective and subjective component. *Jarriett v. Wilson*, 414 F.3d 634, 642 (6th Cir. 2005). "First, the deprivation of Eighth Amendment rights must be 'sufficiently serious' such that the prison officials' acts or omissions objectively result in the denial of the 'minimal civilized measure of

6

life's necessities.'" *Id.* at 642-43 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)). "Second, the prison officials must have acted with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324).

Plaintiffs have failed to satisfy the objective component of an Eighth Amendment claim. Defendant Bergh has proffered an affidavit in which he states that "[a] prisoner classified to segregation is given the opportunity to one hour per day, five days per week out-of-cell exercise and afforded the opportunity to shave and shower three times per week as set forth in MDOC policy." (Doc. No. 54-3, Bergh Aff. ¶ 9.) Defendant Bergh further states that "[s]egregation prisoners may order store items as outlined in PD 04.05.120."[4] (*Id.* ¶ 11.) Furthermore, Defendant Bergh explains that "[h]ousing unit wing lights" are turned on at 6:00 a.m. and turned off at 10:00 p.m. and "count lights," which are "used for formal counts," are turned on at 5:30 a.m. and "turned off no later than midnight." (*Id.* ¶ 13.) Plaintiffs fail to show how these measures deprive them of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977.

Moreover, to the extent that Plaintiffs' alleged Eighth Amendment violations were not addressed by Defendant Bergh's affidavit, this Court does not believe that such allegations rise to the level of an Eighth Amendment violation. For example, Plaintiff Raleem-X alleges that he has been deprived "of access to meaningful oral hygiene." (First Am. Compl. ¶ 150.) Plaintiff Raleem-X does not allege or provide evidence

---

[4]Michigan Department of Corrections' Policy Directive 04.05.120 sets forth the "Segregation Standards." (*See* Doc. No. 54-4.)

demonstrating that alleged deprivation of access to meaningful oral hygiene is "'sufficiently serious' such that the prison officials' acts or omissions objectively result in the denial of the 'minimal civilized measure of life's necessities.'" *Jarriett*, 414 F.3d at 643 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)).

In conclusion, the MDOC Defendants are entitled to summary judgment with respect to Plaintiffs' Eighth Amendment claims.

### 3. Plaintiffs' Fourteenth Amendment Claims

Plaintiffs also argue that the R&R failed to address Plaintiffs' Fourteenth Amendment procedural due process and equal protection claims. The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Procedural due process claims are analyzed under a two-part test. "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right [does a court] continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)(citations omitted).

Plaintiff Percival's principal contention is that a settlement agreement the MDOC entered into to resolve a class action lawsuit brought by inmates in 1986 gives him "a state-created constitutionally protected right to possession and use of his tape player, cassettes, lawbooks, legal assistance agreements, meaningful in-cell activity, mental health evaluations, and access to typing room beyond 2 hrs." (Pls.' Obj. at 10.) Plaintiff Percival refers to this settlement agreement as the "Cain" settlement agreement.

Although the MDOC Defendants briefed this issue, there is no discussion of Plaintiff Percival's procedural due process claim in the R&R. Nevertheless, the Court does not believe Plaintiff Percival's procedural due process claim has merit.

Plaintiff Percival argues that he was stripped of the protections provided in the "Cain" settlement agreement when the MDOC abolished "level vi" and placed him in administrative segregation. (*See* Am. Compl. ¶¶ 20-29.) Plaintiff Percival alleges that he was "placed in a punitive segregation unit atypically and significantly worse than every level v seg unit in the state, including level vi." (*Id.* ¶ 29.) The Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995) held that a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S. Ct. at 2300. In *Sandin*, the Supreme Court concluded that a prisoner has no liberty interest in remaining free from administrative segregation because it does not impose an "atypical and significant hardship." *Id.*; *see also Bennett v. Smith*, 110 Fed. Appx. 633, 634-35 (6th Cir. 2004)(unpublished)(holding that prisoner's placement in administrative segregation for sixty-eight days did not give rise to liberty interest); *Carter v. Tucker*, 69 Fed. Appx. 678, 680 (6th Cir. 2003)(unpublished)(finding that loss of privileges and placement in segregation does not give rise to a protected liberty interest); *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998)(holding that two and one-half years in segregation during investigation of prisoner's involvement in riot did not deprive prisoner of liberty interest). Based on *Sandin* and its progeny, Plaintiff Percival's procedural due process claim fails as a matter of law.

Plaintiffs also objects to the R&R, claiming that neither Magistrate Judge Pepe nor the MDOC Defendants addressed their equal protection claims. (*See* Am. Compl. ¶ 146 (mentioning "equal protection").) The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV. Essentially, "[t]he Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)(citing *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

Plaintiffs argue that "Defendants' taking of Plaintiffs' money, and not providing equal cable access violates the equal protection clause where Defendants fail to seek a cable package affording the same amount of channels to all – less channels, less cost." (Pls.' Obj. at 10.) "Without question, prisoners are not considered a suspect class or purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). It is also without question that there is no fundamental right to cable television. Finally, Plaintiffs have failed to allege or provide evidence showing that the MDOC's alleged restriction on cable television lacks a rational basis. *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007)("The plaintiffs bear the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the alleged government action was motivated by animus or ill-will.'

The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.")(citations omitted). Plaintiffs' equal protection claims will therefore be dismissed.

### C. Plaintiffs' Religious Land Use and Institutionalized Persons Act Claims

Plaintiffs also object to the portion of the R&R addressing their claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the First Amendment. In their complaint, Plaintiffs allege that their ability to freely exercise their religious beliefs is being inhibited due to Defendants' alleged denial of access to a radio, tape player, or television. (*See* Am. Compl. ¶¶ 136, 145-46.)

RLUIPA prohibits the governmental imposition of "a substantial burden on the religious exercise of a person," unless such imposition: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. Similarly, free exercise claims brought under the First Amendment require a plaintiff to show that the exercise of his or her religion has been substantially burdened. *See, e.g, Lyng v. Nw. Cemetery Protective Ass'n*, 485 U.S. 439, 450, 118 S. Ct. 1319, 1326 (1998). Although RLUIPA does not define "substantial burden," courts refer to "the traditional 'substantial burden' test, as defined by the Supreme Court's free exercise jurisprudence," for guidance. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004). One such court has held that a "substantial burden" "is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342

F.3d 752, 761 (7th Cir. 2003); *see also Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)(holding that "a 'substantial burden' on 'religious exercise' must impose a significantly greater restriction or onus upon such exercise").

This Court concurs with Magistrate Judge Pepe's conclusion that Plaintiffs have failed to show that the MDOC Defendants' restrictions with respect to radios, tape players, and television programs have imposed a substantial burden on Plaintiffs' exercise of their religious beliefs. (*See* R&R at 14 ("Plaintiffs have not asserted that MDOC's policy and Defendants' actions in implementing those policies has imposed a substantial burden effectively denying them their ability to worship and practice the tenets of their faiths.")) Plaintiffs do not allege or provide evidence showing that the alleged restrictions on radios, tape players, and television programs render the exercise of their religious beliefs "effectively impracticable." *Civil Liberties for Urban Believers*, 342 F.3d at 761. Rather, as Magistrate Judge Pepe noted, Plaintiffs, at most, have shown that they are merely inconvenienced by the restrictions imposed by the MDOC Defendants; this is not enough to prevail on a RLUIPA or free exercise claim. *See Midrash v. Shephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 1004)(holding that "a 'substantial burden' must place more than a mere inconvenience on religious exercise"). Consequently, the MDOC Defendants are entitled to summary judgment as to Plaintiffs' RLUIPA and free exercise claims.

Accordingly,

**IT IS ORDERED** that the Defendants Patricia Caruso, David Bergh, Barbara Bouchard, and Willie O. Smith's Motion for Dismissal and/or Summary Judgment (Doc.

No. 54) and Defendant Ron Bobo's Motion for Dismissal and/or Summary Judgment (Doc. No. 87) are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Patricia Caruso, David Bergh, Barbara Bouchard, Willie O. Smith, and Ron Bobo are **DISMISSED** from this action.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Andre Coleman
#173324
Alger Maximum Correctional Facility
P.O. Box 600
Munising, MI 49862

Ron Denham
#234620
Huron Valley Complex – Men
3201 Bemis Road
Ypsilanti, MI 48197

Leon Percival
#220239
Alger Maximum Correctional Facility
P.O. Box 600
Munising, MI 49862

Jeffery Carney
#188923
Marquette Correctional Facility
1960 U.S. Hwy. 41 South
Marquette, MI 49855

Raleem-X, a/k/a Curtis Fuller
#211080
Marquette Branch Prison
1960 U.S. Hwy. 41 South
Marquette, MI 49855

Julia R. Bell, A.A.G.
John R. McGlinchey, Esq.
Timothy M. Perrone, Esq.

Mark Schoen, A.A.G.

Magistrate Judge Steven D. Pepe